UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TIMOTHY MIRON,

       Plaintiff,

v.                                        Case No. 2:07-cv-200
                                            CONSENT CASE

RONALD HUGHES,

       Defendant.

_____/

**OPINION**

       Plaintiff Timothy Miron initiated this action by filing a complaint in state court which was then removed by Defendant, pursuant to 28 U.S.C. § 1331.  Plaintiff's First Amended Complaint alleges a state law claim for "intentional interference with an economic relationship."  Defendant maintains that the claim is preempted under § 301 of the Labor Management Relations Act, 28 U.S.C. § 185, and, therefore, is subject to removal.  Defendant has filed a Motion for Summary Judgment, maintaining that Plaintiff's state law claim is preempted by the Labor Management Relations Act and, therefore, must be dismissed.  The parties have fully briefed the issue, and argument was presented on March 20, 2008.

       Timothy Miron is a resident of Gladstone, Michigan, and filed this action against Ronald Hughes of Escanaba, Michigan.  According to Plaintiff's First Amended Complaint, he was hired by the Alger Delta Cooperative Electric Association in May 2004 as a groundsman and lineman.  According to Plaintiff, during the first seven months of his job, his supervisor was Ronald

Hughes.  Plaintiff maintains that Hughes drank on the job with other linemen.  Plaintiff maintains that he reported to his manager that:

> a.   Ronald Hughes provided and encouraged drinking among the work crew during working hours;
>
> b.  Excessive use of alcohol by persons on call caused delay response times to outages and greatly compromised the safety of fellow workers and the public;
>
> c.  An employed lineman had received a DWI in a company vehicle;
>
> d.  Workers operating vehicles while intoxicated created unsafe and illegal operation of company machinery that posed a hazard to the public and damaged company property, including the machines themselves.

Plaintiff's First Amended Complaint and Jury Demand at page 3.  Thereafter, Plaintiff presented his concerns to the Board of Directors of the Alger Delta Cooperative Electric Association.  In April 2005, Plaintiff was laid off from his employment for financial reasons.  At the time of his lay off, Plaintiff was informed that his work had been "excellent" and he would be considered for future employment.

Plaintiff's position as a lineman was covered by a collective bargaining agreement between the Alger Delta Cooperative Electric Association ("Cooperative') and the International Brotherhood of Electric Workers.  Pursuant to this collective bargaining agreement, employees had no rights to recall after being on lay off for a period exceeding one year.  In April 2006, the Cooperative recalled a journeyman groundsman, who had also been on lay off and had less experience than Plaintiff.  At the time this rehire was made, Tom Harrell was the general manager and allegedly asked Defendant Hughes who the company should hire for the groundsman position. According to Plaintiff's complaint, "Purposely and for personal motives outside the course and scope of his employment, Mr. Hughes specifically recommended that the plaintiff not be hired and did so

because of the previous reports the plaintiff had made about Hughes' transgressions as a manager at the co-operative." Plaintiff further alleged that Defendant Hughes told Plaintiff he would never be rehired because of the complaints Plaintiff had made about Hughes the previous year. According to Plaintiff's complaint, Hughes knew that Plaintiff had a business relationship and expectancy with the Cooperative and that Hughes' actions intentionally and improperly interfered with this contract and business relationship between Plaintiff and the Cooperative. Plaintiff seeks damages for "economic injury, loss of goodwill, harm to his reputation, loss of esteem and standing in the community, and loss of business opportunity." Plaintiff's First Amended Complaint and Jury Demand at paragraph 23.

Plaintiff has conceded that he had no right to recall under the collective bargaining agreement and that he is not maintaining that the failure to rehire him was somehow in violation of the collective bargaining agreement. Plaintiff does maintain, however, that he did have an "expectancy of rehire by the Cooperative [which] was destroyed with the defendant's disparaging and untrue remarks." Plaintiff Brief in Resistance to Defendant's Motion for Summary Judgment at page 1. Plaintiff goes on to indicate that, "The issue that arises out of Mr. Miron's state court claim is whether Mr. Hughes committed a tort by interfering with the Miron/Alger Delta Cooperative Electric Association expectancy, it is not the meaning of the collective bargaining agreement and whether it was breached. Therefore, the interpretation of the collective bargaining agreement is unnecessary to prove Mr. Miron's state law claim." *Id*. at 14. Defendant maintains that Plaintiff's state law claim is preempted by § 301 and therefore Defendant is entitled to summary judgment.

The leading case in the Sixth Circuit on this issue is *Mattis v. Massman*, 355 F.3d 902 (6th Cir. 2004). In that case, the Court explained:

Given the importance of maintaining uniform federal law, the Supreme Court "has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement." *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir.1989) (en banc). Preemption under § 301 applies not only to state-law contract claims, but has been expanded to include state-law tort claims as well. *Id.* at 1329-30 (citing *Allis-Chalmers Corp.,* 471 U.S. at 217, 105 S.Ct. 1904). Not every tort claim, however, relating to employment will be subject to preemption under § 301. *Id.* at 1330. To survive preemption under § 301, the tort claims must be "independent" of the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1989); *Allis-Chalmers Corp.*, 471 U.S. at 213, 105 S.Ct. 1904 (analyzing state-law claim to determine if it was "independent of any right established by contract, or, instead, whether evaluation of the tort claim [was] inextricably intertwined with consideration of the terms of the labor contract"); *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir.1994) (citing *Lingle* ).

In *Allis-Chalmers Corp.*, for example, the plaintiff brought a Wisconsin tort claim of bad-faith handling of an insurance claim against the defendant. The plaintiff's right to insurance, however, had been established by the collective bargaining agreement entered into by his union and the defendant. In finding the claim to be preempted, the Supreme Court explained, "[b]ecause the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation." 471 U.S. at 218, 105 S.Ct. 1904. Yet, in *Lingle,* the Supreme Court found that the plaintiff's retaliatory discharge claim, which alleged retaliation for filing a workers' compensation claim, was not preempted by § 301. The Supreme Court reasoned, "the state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective bargaining agreement." 486 U.S. at 407, 108 S.Ct. 1877. Thus, the basic question before this court is whether Mattis's state-law tort claims are "independent" of the CBA that governed his employment.

To determine whether a state-law claim is sufficiently "independent" to survive § 301 preemption, this court has adopted a two-step inquiry. *DeCoe*, 32 F.3d at 216-17. First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed

- 4 -

> by the plaintiff were created by the collective bargaining agreement, or instead by state law. *Id.* at 216. If the rights were created by the collective bargaining agreement, the claim is preempted. In short, if a state-law claim fails *either* of these two requirements, it is preempted by § 301.

*Mattis*, 355 F.3d at 905-906.

In the present case, as in *Mattis*, Plaintiff has raised a claim of tortious interference with an economic relationship or expectation. The elements of that offense, as outlined in *Mattis*, are as follows: (1) the existence of a valid business relationship not necessarily evidenced by an enforceable contract, (2) knowledge of that business relationship or expectancy on the part of the defendant, (3) an intentional interference inducing or causing a breach or termination of the relationship, and (4) resulting damages. The Court in *Mattis* found that the plaintiff's state law tort claim was preempted, explaining:

> The question of whether the elements of this state-law claim should be considered independent of the CBA was clearly answered by this court in *DeCoe,* in which we held that § 301 preempted plaintiff's claim of tortious interference with economic relations (construed as tortious interference with a business relationship). In *DeCoe,* the plaintiff brought a complaint against several of his co-workers for whom he had served as a committeeman, or supervisor. 32 F.3d at 214-15. The workers had previously filed administrative proceedings against the plaintiff for alleged sexual harassment, and the plaintiff subsequently sued them for defamation, tortious interference, and intentional infliction of emotional distress. In finding the tortious interference claim preempted, we assumed that the plaintiff satisfied the first requirement because no interpretation of the contractual terms was necessary. We still found the claim preempted, however, because it asserted a right created not by state law, but by the collective bargaining agreement (thus violating the second requirement). "[R]esolution of the plaintiff's claim will not involve the direct interpretation of [the] CBA, but ... will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA." *Id.* at 218 (quoting Jones v. Gen. Motors Corp., 939 F.2d 380, 382-83 (6th Cir.1991)). In these two previous cases (*DeCoe* and *Jones* ), the plaintiffs' claims sought to vindicate rights

- 5 -

created by the collective bargaining agreements. In *DeCoe,* the plaintiff alleged that the defendant "interfered with Plaintiff's job as a Local 326 committeeman." 32 F.3d at 218. The rights and responsibilities of the committeeman, however, were created and defined by the CBA. *Ibid.* In *Jones,* the plaintiff alleged that the defendant breached the terms of a settlement agreement, which he claimed required him to be reinstated. As we noted, however, "the settlement agreement itself [was] a creature wholly begotten by the CBA." 939 F.2d at 383. Thus, the claim was the "archetype of a state-law claim that by its very nature involve[d] an examination of the employment relationship of parties to a CBA." *Ibid.*

*DeCoe* requires that Mattis's claim be preempted. Similarly to the plaintiff in *DeCoe,* Mattis alleged interference with a business relationship that was "created entirely by the CBA." *DeCoe,* 32 F.3d at 218. Both Mattis and the district court attempted to distinguish *DeCoe* by emphasizing that "committeemen" were the unique creations of the collective bargaining agreement in question, which made preemption more compelling. The relationship in this case, however, was also created by the CBA. Even more importantly, the question of whether Massman "interfered" with Mattis's business relationship would require us to delve into the rights and responsibilities of plant supervisors under the CBA. Undoubtedly, the supervisor would claim that his actions were consistent with his duties as a supervisor at the factory. Congress intended such questions to be addressed within the realm of federal, not state, law.

Finally, we note that Mattis has not established the existence of any external regime of state law that would allow him to allege violations of rights independent from the rights created by the CBA. For example, in *Smolarek v. Chrysler Corp.,* the plaintiff's tort claim survived preemption in part because it asserted rights established by Michigan's law against handicap discrimination. 879 F.2d 1326, 1331 (6th Cir.1989) (en banc). Similarly, in *O'Shea v. Detroit News,* the plaintiff's claim survived preemption in part because it asserted claims of retaliatory discharge and age discrimination. 887 F.2d 683, 686-87 (6th Cir.1989) (en banc). Mattis's complaint, by contrast, alleged violations of rights established only by the CBA. For instance, he alleged that Massman denied him vacation days, failed to provide proper training, and failed to excuse his absences for illness. These entitlements belonged to Mattis solely because of the CBA. Count II is preempted.

*Mattis*, 355 F.3d at 906-907.

In contrast to *Mattis*, and relied upon by Plaintiff, is the Sixth Circuit's decision in *Dougherty v. Parsec*, 872 F.2d 766 (6th Cir. 1989).  In that decision, the Sixth Circuit recognized a plaintiff's state law claim for tortious interference with a contract against a third party, finding that the claim was not preempted by § 301.  According to the court in *Dougherty*:

> Here, the tortious interference with the contract/business relationship claim can be resolved without interpreting the collective bargaining agreement.  Any analysis of the collective bargaining agreement has already been done.  Plaintiff was discharged, and the arbitrator upheld the discharge.  If the case goes to trial, [the employer's client] will deny any wrongdoing and provide [the employer's] witnesses to state the reasons why Plaintiff was discharged.  No further analysis of the collective bargaining agreement will be necessary.

*Dougherty*, 872 F.2d at 770.

In the instant case, Plaintiff argues that he was not an employee of the Alger Delta Cooperative Electric Association and had no rights under the collective bargaining agreement because his seniority rights had lapsed.  Thus, Plaintiff maintains, there is no requirement for the collective bargaining agreement to be analyzed in considering his state law claim.  In *Dougherty* Plaintiff had filed his state law tort claim against his employer, the union, and the employer's client, arising out of his termination from employment.  The issue considered in *Dougherty* was whether or not the plaintiff's complaint against a client of the employer for tortious interference was preempted.  According to the plaintiff, the client of the employer had requested the plaintiff's discharge.  The Sixth Circuit held that the tortious interference claim could be resolved without interpreting the collective bargaining agreement.

Relying on the Supreme Court's decision in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), the court explained:

> Finally, *Lingle* requires this court to find that Dougherty's state law claim is not preempted by Section 301.  *Lingle*'s language is clear:

- 7 -

> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Dougherty*, 872 F.2d at 771.

*Lingle*, *Dougherty* and *Mattis* all would appear to recognize that a claim of retaliatory discharge or discriminatory discharge in violation of some state law is not preempted by a collective bargaining agreement. At oral argument, Defendant conceded that a state whistleblowers claim would not be preempted by § 301. Accordingly, the law of this circuit recognizes that a state law claim that is independent of the collective bargaining agreement and that does not require interpretation of that agreement is not preempted under § 301. Defendant relies upon the *Mattis* decision in maintaining that preemption is required here because an analysis of the state law claim will require the decision maker to delve into the rights and responsibilities of a supervisor under the collective bargaining agreement.

The Court concludes that following *Lingle* leads to the conclusion that Plaintiff's state tort claim is not preempted by § 301. Plaintiff has conceded that the failure to hire him for the lineman position in April 2006 was not in violation of the collective bargaining agreement and that an analysis of this claim does not require interpretation of the collective bargaining agreement. Plaintiff's claim, as recognized by Defendant's counsel, is similar in some respects to a whistleblower claim or a retaliatory discharge claim. Furthermore, the Court concludes that the prudent course under these circumstances is to remand this case back to state court for consideration

- 8 -

of Plaintiff's state law claim.[1]  The order of remand will specify that Plaintiff's state law claim is

not and cannot be premised on an allegation that the collective bargaining agreement was violated.

Accordingly, Defendant's motion for summary judgment will be denied and this case will be

remanded to state court.


                                            /s/ Timothy P. Greeley
                                            TIMOTHY P. GREELEY
                                            UNITED STATES MAGISTRATE JUDGE

Dated:   March 27, 2008

---

[1]What remains of plaintiff's state law claim is not clear.  The state court must determine
whether or not a failure to recall an employee which fully complies with the collective bargaining
agreement can provide liability for a supervisor who acts tortiously.  The claim is most akin to a state
law claim that a defendant somehow acted in violation of state law such as discrimination or
retaliatory discharge laws while complying with the collective bargaining agreement. The state court
is in a better position to determine the viability of Plaintiff's state law claim.